[No. 19292. *En Banc.* February 18, 1926.]

THE STATE OF WASHINGTON, *Respondent*, v. RUTH
GARRISON, *Appellant.*[1]

[1] INSANE PERSONS (22)—CONFINEMENT OF INSANE CRIMINALS—
APPLICATION FOR DISCHARGE—SUFFICIENCY. Upon petition for a
trial as to the present sanity of a convict found not guilty of
murder by reason of insanity at the time of the offense, and
confined in the state penitentiary as unsafe to be at large, the
physician's certificate that the prisoner "is at the present time
sane, and in all respects a normal person" is not a compliance
with Rem. Comp. Stat., § 6970, requiring a physician's certificate
that the prisoner "has become sane since his commitment and
is a safe person to be at large," and does not entitle the prisoner
to a trial (TOLMAN, C. J., and FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for
King county, Gilliam, J., entered December 19, 1924,
dismissing an application for a trial as to the sanity of
a convict, upon sustaining a demurrer to the petition.
Affirmed.

*Frederick J. Wettrick* and *Ralph Lyter Morse,* for
appellant.

*Ewing D. Colvin* and *Harry A. Rhodes,* for respond-
ent.

MAIN, J.—This is an application by an inmate of the
criminal insane ward of the Washington state peni-
tentiary for a trial upon the question of her present
sanity. To the petition the trial court sustained a
demurrer and entered a judgment of dismissal, from
which the petitioner appeals.

The facts, as stated in the petition, are substantially
the following:

The appellant, Ruth Garrison, on March 20, 1919, by
information was charged with the murder of one Grace

. . [1]Reported in 243 Pac. 373.          ... ·

19—137 WASH.

Storrs by administering a certain poison. To the information she pleaded "not guilty," and interposed, in writing, a plea of insanity at the time of the commission of the act, but alleged that, at the time of filing the plea, she had recovered her sanity. Upon the trial, the jury found the appellant "not guilty," and specially found, first, that she committed the crime charged; second, that the verdict of "not guilty" was rendered because of her insanity or mental irresponsibility at the time of the commission of the crime; and third, that the insanity or mental irresponsibility continued and existed at the time of the trial. On May 14, 1919, the trial court entered a judgment upon the special findings of the jury, and a commitment was issued, under which the appellant was sent to the criminal insane ward of the state penitentiary, where she has since remained.

On November 17, 1924, she made an application, in writing, to the physician in charge of the insane ward of the state penitentiary for an examination, setting forth that, since the date of her commitment, she had become sane and mentally responsible in every way, which application is attached to and made a part of the petition. On the same day the physician prepared and signed a certificate, which recited that

"He has had the defendant Ruth Garrison, No. 8762, an inmate of the criminal-insane ward at the said Washington state penitentiary, under his continued observance over a period of five years last past; that is, since her incarceration in said institution, and that he hereby certifies that she is at the present time sane and in all respects a normal person; that her insanity, if any ever existed, is not likely to recur; . . ."

Upon the receipt of this certificate of the physician, the warden of the penitentiary, in writing, granted permission to the appellant to petition the court for an

order granting her a hearing on the question of her sanity. Thereafter the present petition was filed and came on for hearing before the trial court, with the result as above indicated.

The appellant's petition for discharge is based upon ch. 30, Laws of 1907, p. 33; Rem. Comp. Stat., § 2173, which is "An Act relating to the criminal insane, their trial, commitment and custody." It was under this act that the appellant filed her special plea of insanity, upon which the jury made special findings. Section 6 of the act defines the procedure, when one charged with crime has been acquitted by reason of insanity and committed to the criminal insane ward of the state penitentiary, when such person claims to have become sane and desires to be discharged. That section is as follows:

"When any person committed hereunder shall claim to have become sane or mentally responsible and to be free from danger of any relapse or recurrence of mental unsoundness and a safe person to be at large, he shall apply to the physician in charge of the criminal insane for an examination of his mental condition and fitness to be at large. If the physician shall certify to the warden that there is reasonable cause to believe that such person has become sane since his commitment and is a safe person to be at large, the warden shall permit him to present a petition to the court that committed him, setting up the facts leading to his commitment, and that he has since become sane and mentally responsible, and is in such condition that he is a safe person to be at large, and shall pray his discharge from custody. The petition shall be served upon the prosecuting attorney of the county, whose duty it shall be to resist the application. No other pleading than the petition need be filed, and the court shall set the cause down for trial before a jury, and the trial shall proceed as in other cases. The sole issue to be tried in the case shall be whether the person petitioning for a discharge has, since his commitment,

become a safe person to be at large, and the burden of proof shall be upon him. If the evidence given upon his trial upon the criminal charge shall have been preserved by statement of facts or bill of exceptions as hereinbefore provided, either party may read such parts of that record as may be desired as evidence upon the hearing. The jury shall be required to find whether the petitioner has become sane since his commitment, is not liable to a recurrence of the mental unsoundness or relapse, and is a safe person to be at large. If they so find, he shall be entitled to a discharge. If not, his petition shall be dismissed, and he shall be remitted to custody. . . . " Rem. Comp. Stat., § 6970.

It will be observed that, when a person committed under this statute claims to have "become sane," he shall apply to the physician in charge for an examination as to his mental condition; that the physician shall certify that such person has "become sane since his commitment and is a safe person to be at large;" that thereupon the warden shall permit him to present a petition to the court that committed him, setting up that since his commitment he has "become sane;" that the issue to be tried by a jury shall be whether the person petitioning for discharge has since his commitment "become a safe person to be at large," and that the jury shall find whether he has "become sane" since his commitment. It is the purpose of this statute to permit one to be discharged, who has been committed to the criminal insane ward of the state penitentiary, only when there has been a change in his mental condition. In other words, as recited over and over again in the statute, that he has "become sane" since his commitment.

[1] The first requisite in the procedure is that the physician in charge of the insane ward shall issue such a certificate. In the present case the physician did not certify that the appellant had become sane since

her commitment, but only that she was sane at the
time of the making of the certificate. Whether she had
become sane, since her commitment, was a fact which
the law required to be stated, in the absence of which
the application was defective. Had there been a change
in the appellant's condition, and had she become sane
since her commitment in the opinion of the physician,
he would undoubtedly have so certified, because it is
presumed that he will perform the duties of his office
fairly and properly.

In *Wagner v. White*, 38 App. D. C. 554, it is said:

"The provision that the superintendent shall certify
to the restoration of the sanity of the prisoner, and
that he may then be brought before the court for
sentence, is founded in the presumption that the
superintendent will perform the duties of his office
fairly and properly, and is a reasonable one."

The petition does not allege that the appellant had
become sane since her commitment, other than by
reference to the fact that it is so stated in her ap-
plication to the physician. It is undoubtedly one of
the purposes of the law under which this proceeding is
brought, if not its chief purpose, to guard against sham
and frivolous pleas of insanity by a defendant charged
with a serious crime. The law is careful to state what
is necessary, as a prerequisite to a trial before a jury
by one committed to the insane ward, before he is
entitled to a trial upon the question as to whether he
has become sane since his commitment. It is true, that
after the appellant was found to be insane by the
special finding of the jury, there was a presumption
that such insanity continued; but this presumption,
taken in connection with the statement in the applica-
tion of the appellant to the physician and the al-
legation in the petition that the appellant is now sane,
does not meet the requirements of the law. The law

contemplates that, before one may be discharged, it is necessary that there be a change in his mental condition; in other words, that he has become sane and a safe person to be at large since his commitment.

It is suggested that it would be impracticable to get such a certificate, if the physician in charge at the time of the commitment was not the same individual as the one in charge at the time the application was made. But that is a question which it is not necessary here to consider, because in the present case the physician in charge at the time of the commitment was the one in charge at the time the application was made.

In the cases of *State ex rel. Thompson v. Snell,* 46 Wash. 327, 89 Pac. 931, 9 L. R. A. (N. S.) 1191, and *State v. Craig,* 52 Wash. 66, 100 Pac. 167, there is nothing out of harmony with the views here expressed.

A review of the decisions from other jurisdictions would serve no useful purpose, because, so far as we are advised, there is a statute in no other state like or similar in terms to the statute of this state.

The judgment will be affirmed.

MITCHELL, HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.

TOLMAN, C. J. (dissenting)—We have here a simple matter of the construction of a statute and a certificate, the language of neither being ambiguous; and, in so construing, we must do so without regard to, or thought of, the possible final results in this case, and with no thought of public approval or disapproval.

As I read the statute quoted in the majority opinion, no set form of certificate is required to be made by the physician in charge. The physician takes the patient as insane, because the verdict of the jury has fixed that as her condition, as a matter of law, as of the time it was rendered. He must start with the pre-

sumption that she was insane when she came under his care and observation, and that presumption he can in nowise impeach. When he now certifies that the appellant "is at the present time sane and in all respects a normal person; that her insanity, if any ever existed, is not likely to recur,—" he has given the certificate which the statute requires, and an issue as to present sanity is raised, ready to be submitted to a jury, as the statute directs. Any other construction of the statute, or of the physician's certificate, seems to me labored and illogical, and I cannot assent. To permit the physician, by what, at most, is no more than an innuendo, to impeach the final, unreviewable adjudication of insanity at the time of commitment, is to disregard that adjudication and hold it for naught. Jurors are human and therefore not infallible. If the jury makes a mistake, the fault must be ascribed to the jury system and not to the judges, and the remedy must be applied accordingly.

For these reasons I dissent.

FULLERTON, J., concurs with TOLMAN, C. J.