[No. 22351. *En Banc.* November 25, 1930.]

THE STATE OF WASHINGTON, *on Relation of Ewing D. Colvin, Plaintiff*, v. THE SUPERIOR COURT FOR WALLA WALLA COUNTY, *Respondent*.[1]

[1] Reported in 293 Pac. 986.

336

*Ewing D. Colvin* and *R. M. Burgunder*, for relator.
*Sharpstein & Smith,* for respondent.

PARKER, J.—The relator, as prosecuting attorney for King county, seeks in this court a writ of prohibition restraining the superior court for Walla Walla county from discharging, upon a habeas corpus proceeding commenced in that court, Ruth Garrison from her confinement as a criminally insane person in the department of the criminally insane in the penitentiary of this state in that county; she having been so committed by a judgment of the superior court for King county upon her being found, by a jury in that court, not guilty of the crime of murder because of her insanity.

Relator seeks this relief in behalf of the state upon the theory that the superior court for Walla Walla county is proceeding in excess of its jurisdiction, in view of the provisions of §§ 4, 6 and 7, ch. 30, Laws of 1907, pp. 34-36; §§ 2176, 6970 and 6971, Rem. Comp. Stat., which, he contends, vest in the superior court for King county exclusive jurisdiction to entertain the question of the discharge of Ruth Garrison from such confinement. Upon the filing of relator's application in this court, an alternative writ was issued staying the habeas corpus proceeding in the superior court for Walla Walla county pending the disposition of relator's application in this court. The matter is before us upon the answer and return of the judge of the superior court to relator's application and the alternative writ.

We summarize from the admissions and allegations of the answer and return of the judge of the superior court what we conceive to be the controlling facts determinative of the question of that court's exceeding its jurisdiction. On May 14, 1919, there was duly rendered by the superior court for King county a judgment of commitment against Ruth Garrison, which, in so far as we need here notice its language, reads as follows:

"WHEREAS the said defendant [Ruth Garrison] in this court, upon the 9th day of May, 1919, has been found not guilty of the crime of murder in the first degree; and

"WHEREAS the jury further found:

"(1) That the defendant committed the crime charged;

"(2) That they acquit her because of her insanity or mental irresponsibility at the time of the commission of the crime charged; and

"(3) That her insanity or mental irresponsibility continued and existed at the time of the trial;

"Now, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED That the said defendant is not guilty of the crime of murder in the first degree;

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED

"(1) That the defendant committed the crime charged;

"(2) That she is not guilty by reason of her insanity or mental irresponsibility at the time of its commission;

"(3) That her insanity or mental irresponsibility continued and existed at the time of the trial;
and that she be confined as a criminally insane person in the penitentiary of the state of Washington, in the ward or department for criminally insane persons in such penitentiary, until discharged according to law."

This judgment was rendered in accordance with § 4, ch. 30, Laws of 1907, p. 34. She was accordingly delivered into the custody of the warden of the penitentiary. In December, 1929, Ruth Garrison, claim-

ing that since her commitment she has become sane and a safe person to be at large, requested the physician in charge of the criminally insane at the penitentiary to so certify, to the end that she might apply to the superior court for King county for her discharge, as prescribed by § 6 of ch. 30 of the Laws of 1907, p. 35. Thereupon the physician certified as follows:

"December 18, 1929

"Clarence E. Long, Warden
"Washington State Penitentiary
"Walla Walla, Washington
"Dear Sir:

"Ruth Garrison, having applied to me, physician in charge of the criminal-insane at the Washington State Penitentiary at Walla Walla, for examination of her mental condition and fitness to be at large, I will state that I have had Ruth Garrison, No. 8762, under my continual observation for a period of over seven years last past, and during all of said time the said Ruth Garrison has been sane and normal mentally, and a fit and safe person to be at large, and at the present time she is sane and normal mentally, and is a fit and safe person to be at large.

"I was not the physician in charge at the Washington State Penitentiary at Walla Walla at the time the said Ruth Garrison was received at said institution and did not become acquainted with her until several months after she was received at such institution. I cannot certify that she has become sane since her commitment, or that she has become a safe person to be at large since her commitment, as I was in no way acquainted or familiar with her mental condition until several months after she was received at the Washington State Penitentiary, and had no connection with said institution until several months after Ruth Garrison was received at the penitentiary.

"Respectfully yours,
"J. W. INGRAM,
"Physician in charge of the Criminal-insane at the Washington State Penitentiary at Walla Walla."

On December 21, 1929, the warden addressed a communication to her counsel refusing to permit her to present a petition to the superior court for King county for a hearing as to her having become sane and a safe person to be at large, expressing therein his opinion that he did not consider the certificate of the physician sufficient to warrant the granting to her permission to present a petition in that behalf to the superior court for King county.

Thereupon, by her counsel, she applied to the superior court for Walla Walla county for a writ of habeas corpus looking to her discharge, claiming her right to be discharged because of her becoming sane and a safe person to be at large. The warden, appearing by the *Attorney General,* resisted the entertainment of the question of her right to a discharge through habeas corpus proceedings in the superior court for Walla Walla county, upon the ground that that court did not have jurisdiction to so entertain that question.

That court overruled the challenge to its jurisdiction, and proceeded with the hearing, receiving evidence introduced in her behalf, and at the conclusion of the hearing, orally announced its decision to discharge her, upon the ground that she had become sane and a safe person to be at large. Before the entry of a formal judgment in accordance with such announced decision, the alternative writ of prohibition was, upon application of relator, issued by this court temporarily restraining the superior court from proceeding in accordance with its announced decision.

It seems desirable that we have before us, preliminary to our discussion of the several contentions here made, certain of our statutory provisions. It is conceded that the judgment of commitment, above quoted, was rendered strictly in accordance with ch.

30, Laws of 1907, p. 33, so we need not notice the provisions of that act prescribing the procedure up to the rendering of such a judgment. The provisions of that act, so far as material to our present inquiry, are as follows:

"Sec. 4. [§ 2176, Rem. Comp. Stat.] If the jury find that the defendant committed the crime charged, that he is acquitted because of his insanity or mental irresponsibility at the time of its commission, and that the insanity or mental irresponsibility still exists, or, if it does not exist, that he is so liable to a relapse or recurrence of the insane or mentally irresponsible condition as to be an unsafe person to be at large, the court shall enter judgment in accordance therewith, and shall order the defendant committed as a criminally insane person until such time as he shall be discharged as hereinafter provided.

"Sec. 6. [§ 6970, Rem. Comp. Stat.] When any person committed hereunder shall claim to have become sane or mentally responsible and to be free from danger of any relapse or recurrence of mental unsoundness and a safe person to be at large, he shall apply to the physician in charge of the criminal insane for an examination of his mental condition and fitness to be at large. If the physician shall certify to the warden that there is reasonable cause to believe that such person has become sane since his commitment and is a safe person to be at large, the warden shall permit him to present a petition to the court that committed him, setting up the facts leading to his commitment, and that he has since become sane and mentally responsible, and is in such condition that he is a safe person to be at large, and shall pray his discharge from custody. The petition shall be served upon the prosecuting attorney of the county, whose duty it shall be to resist the application. No other pleadings than the petition need be filed, and the court shall set the cause down for trial before a jury, and the trial shall proceed as in other cases. The sole issue to be tried in the case shall be whether the person petitioning for a discharge has, since his commit-

ment, become a safe person to be at large, and the burden of proof shall be upon him. If the evidence given upon his trial upon the criminal charge shall have been preserved by statement of facts or bill of exceptions as hereinbefore provided, either party may read such parts of that record as may be desired as evidence upon the hearing. The jury shall be required to find whether the petitioner has become sane since his commitment, is not liable to a recurrence of the mental unsoundness or relapse, and is a safe person to be at large. If they so find, he shall be entitled to a discharge. If not, his petition shall be dismissed, and he shall be remitted to custody. Either party may appeal to the supreme court from the judgment discharging the petitioner or remitting him to custody, in the same manner that appeals in other cases are taken.

"Sec. 7. [§ 6971, Rem. Comp. Stat.] Should any criminally insane person discharged hereunder again become insane or mentally irresponsible, or be found to be an unsafe person to be at large because of mental unsoundness, the prosecuting attorney of the county from which he was committed may file a petition in the name of the state, setting up the facts leading to his commitment and subsequent discharge, and the relapse which is the basis of the petition. A warrant shall be issued for the defendant as in criminal cases, the defendant taken into custody, and the case tried to a jury, as in other cases provided herein; . . . "

It is first contended, as against interference by prohibition with the assumed habeas corpus jurisdiction of the superior court, that this prohibition proceeding should be dismissed because relator, as prosecuting attorney for King county, is not a person beneficially interested in the continued confinement of Ruth Garrison as an insane person. In our prohibition procedure statute, referring to sections of Remington's Compiled Statutes, we read:

"§ 1027. The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of

any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person.

"§ 1028. It may be issued by any court, except police or justices' courts, to an inferior tribunal, or to a corporation, board or person, in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It is issued upon affidavit, on the application of the person beneficially interested."

It seems to us that relator, as prosecuting attorney for King county, is, in his official capacity, a "person beneficially interested" in the lawful confinement of Ruth Garrison as a criminally insane person; and that, when it is sought to discharge her from confinement as such by any judicial proceeding, it becomes his duty to resist such attempted discharge if he is of the opinion that she is not lawfully entitled to such discharge. If she were seeking her discharge by the procedure prescribed by the above quoted § 6 of the act of 1907, her petition would have to be served upon the relator as the prosecuting attorney for King county, "whose duty it shall be to resist the application," using the language of § 6 of the act. Besides, if she had been discharged because of becoming sane since her commitment and had again become insane, it would, by the above quoted language of § 7 of the act, have been the duty of relator, as prosecuting attorney, to file a petition in the superior court for King county and conduct a prosecution therein looking to her recommitment. Plainly, we think these statutory duties placed upon the prosecuting attorney express a legislative intent that he shall be considered as having a beneficial interest for the public warranting him in resisting, by prohibition if necessary, the discharge of one duly committed as a criminally insane person. We conclude that relator is a person officially, beneficially

interested, and as such is qualified to maintain this prohibition proceeding.

It is contended in support of the superior court's habeas corpus jurisdiction that the statutory remedy prescribed by § 6 of the act of 1907 and habeas corpus are concurrent remedies, either of which a person committed as a criminally insane person has the right to choose and invoke looking to his discharge. By the above quoted § 4 of the act of 1907, we have seen that a person acquitted upon his trial and there found to be a criminally insane person shall be committed as such "until such time as he shall be discharged as hereinafter provided." Then follows in § 6 of the act the prescribed procedure, including trial by jury, for the determination of his claimed right to be discharged.

Manifestly, the legislative intent is that this statutory remedy shall be exclusive. In opposition to this view, there is cited the following very general language from the text of 12 R. C. L., p. 1186:

"The existence of a statutory remedy whereby a person restrained of his liberty may be released is usually held to be cumulative and not exclusive."

The decisions of the courts seemingly justifying this general statement, as we are at present advised, have to do with administrative methods and remedies, and not judicial remedies, looking to the discharge of persons committed as insane persons. In such cases habeas corpus is generally held to be a concurrent remedy for want of any other judicial remedy; the view being, as we read the decisions, that a person committed as an insane person cannot be deprived of all judicial remedy looking to his discharge.

So, if there be no statutory judicial remedy, habeas corpus is necessarily the proper judicial remedy. Our decision in *State ex rel. Thomson v. Clifford,* 106 Wash.

16, 179 Pac. 90, recognizes this to be the law, there being no statutory judicial remedy available to the committed insane person, who was not one committed as criminally insane, there seeking his discharge upon the ground of his becoming sane; though it was there held that he could not invoke even the judicial remedy of habeas corpus until his available administrative statutory remedy first be invoked by him and had failed him. A somewhat exhaustive note in 1 L. R. A. (N. S.) 547 lends support to our present expressed view.

It is further contended in support of the superior court's habeas corpus jurisdiction that in any event it has such jurisdiction to determine Ruth Garrison's claimed right of discharge, because she has been unable to procure a proper certificate from the physician to the warden as to her becoming sane and a safe person to be at large, as authorizes the warden permitting her to present to the superior court for King county a petition for her discharge.

It is argued that the above quoted certificate of the physician to the warden is not sufficient for that purpose, because it does not certify that the physician believes that she "has become sane since her commitment." He only knew of her mental condition during the period after the expiration of several months following her commitment, he not having any connection with the penitentiary except since then. His certificate that he believes her to have been sane and a fit person to be at large during the several years of his observation of her is based wholly upon his knowledge acquired during that period. This, it seems to us, satisfies the statutory requirement as to the physician's certificate, sufficient to call for the warden's permitting her to present a petition to the superior

court for King county looking to the determination of her claimed right to be discharged.

Against this view, it is argued that this certificate is insufficient as a basis for her petitioning the superior court looking to her discharge under the provisions of the act of 1907, to the same extent as the one she previously obtained in that behalf; which certificate we held in *State v. Garrison,* 137 Wash. 577, 243 Pac. 373, to be insufficient as a basis for her so petitioning the superior court. That certificate, in so far as quoted in that decision and in so far as need be here noticed, reads:

" 'He [physician] has had the defendant Ruth Garrison, No. 8762, an inmate of the criminal-insane ward at the said Washington state penitentiary, under his continued observance over a period of five years last past; that is, since her incarceration in said institution, and that he hereby certifies that she is at the present time sane and in all respects a normal person; that her insanity, if any ever existed, is not likely to recur; . . .' "

That certificate purports to have been made by a physician having Ruth Garrison under his observation since her commitment, so he was manifestly able to state whether there had been any change in her mental condition after her commitment; that is, as to whether or not she had become sane after her commitment. Failing to so certify, we held that certificate to be insufficient.

That case was correctly decided, and we adhere to all that was said in that decision. Here we have a physician's certificate made ten years after her commitment as a criminally insane person, certifying that she has, in the opinion of the physician, been sane and a safe person to be at large during the period he has had observation of her, he having no knowledge of her

previous mental condition. This, we think, should be considered as a certificate of her becoming sane since her commitment. To read literally the certifying statutory quoted words, "has become sane since her commitment," and require a certificate in those exact words, as applicable to Ruth Garrison under the circumstances here shown, would probably forever deprive her of the benefit of the procedure under the act of 1907.

So we conclude that she can proceed under that act, and that therefore she is not entitled to relief by habeas corpus because of want of a proper physician's certificate enabling her to have the question of her discharge judicially determined by the superior court for King county, as provided by that act. There was not presented in *State v. Garrison,* 137 Wash. 577, 243 Pac. 373, nor is there here presented, any question of the physician's arbitrarily refusing to make a proper certificate. If such question were presented, it might well be argued that he could be compelled to act in that behalf, or that the committed person would be privileged to proceed in the superior court under the act of 1907 as though such proper certificate had been made by the physician, upon the committed person's making proper showing in that behalf. Our decision in *State v. Saffron,* 146 Wash. 202, 262 Pac. 970, is of interest in this connection. However, we need not here pursue that inquiry.

It is further contended in support of the superior court's habeas corpus proceeding that, because the warden has refused to permit Ruth Garrison to present a petition to the superior court for King county looking to her discharge, the statutory judicial procedure prescribed by the act of 1907 is unavailing to her, and that therefore she has the remedy of habeas corpus available to her. Section 6 of the act, as

we have seen, provides that, upon the making of a proper certificate by the physician, "the warden shall permit him [committed person] to present a petition to the court that committed him." This duty of the warden is manifestly mandatory, ministerial, and not discretionary. So we are clear that the refusal of the warden to so act upon a proper certificate is no impediment to the presenting to the superior court of a petition by or in behalf of the committed person looking to his discharge, further than that it might be rendered necessary for the court, by appropriate coercive process, to compel the warden to produce the physician's certificate and render it available to the committed person, and also to produce the petitioner in court for trial upon the question of restored sanity.

Finally, we conclude that the act of 1907 furnishes to Ruth Garrison, as a committed criminally insane person claiming to have become sane and a safe person to be at large, an adequate judicial remedy which renders it unnecessary for her to resort to a habeas corpus proceeding looking to her discharge, and that therefore that statutory judicial proceeding is her exclusive remedy. It follows that the superior court for Walla Walla county should be prohibited from further proceeding in the habeas corpus proceeding pending therein, because that proceeding is in excess of its jurisdiction. It is so ordered. Let a writ of prohibition issue accordingly.

MITCHELL, C. J., BEALS, HOLCOMB, and MAIN, JJ., concur.

TOLMAN, J. (concurring)—The physician's certificate under consideration in this case is, in legal effect, exactly the certificate which was passed upon in the case of *State v. Garrison,* 137 Wash. 577, 243 Pac. 373. It contains every element of the certificate considered

in that case and nothing more. If the views expressed by Millard, J., prevail, then, no matter how denominated, in my judgment, they amount to an overruling of the prior decision and the statutory remedy is thus open to the prisoner. In this respect the views expressed by Parker, J., are identical with those expressed by Millard, J. Either view prevailing overrules the prior decision and I concur therein.

I accept in a general way the views expressed by Parker, J., as to the statutory remedy, and if that be available on any ground and for any reason, then the courts, no matter what their inherent power, will not grant relief through the extraordinary writ of habeas corpus. I therefore concur in the results reached by Parker, J.

MILLARD, J. (dissenting)—I dissent. Inasmuch as courts may not be divested by statute of their jurisdiction conferred by the state constitution to issue writs of habeas corpus, the superior court of Walla Walla county is not proceeding in excess of its jurisdiction.

I agree with the view of the majority that the petitioner can proceed under the act of 1907 [Laws of 1907, p. 33]. It does not follow, however, that she is thereby precluded from resorting to habeas corpus proceedings for her discharge, and that the statutory judicial proceeding is her exclusive remedy.

If the legislature purposed, by the act of 1907, to take away from the superior courts, other than the committing court, the common law power exercisable by the use of the writ of habeas corpus, it exceeded its authority. Our superior courts take their power to issue writs of habeas corpus from the constitution, not from the legislature. Only to that instrument do the superior courts look for the exercise of their authority, the same as the legislature must do for limitations upon its powers.

Section 6, Art. IV of the state constitution, defining the jurisdiction of the superior courts, provides that such courts

". . . shall always be open, except on nonjudicial days, . . . and shall have power to issue . . . writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties."

This is a self-executing provision of the constitution, not within the power of the legislature to modify or destroy. That provision is analogous to the provision in state constitutions defining the amount (area or value) of land constituting a homestead, and expressly exempting the same from any forced sale. All legislation respecting such right must be subordinate to the constitutional provision and in furtherance of its purpose, and must not, in any particular, attempt to narrow the right.

"The provision of a constitution which defines a homestead and exempts it from forced sale is self-executing, at least to this extent, that, though it may admit of supplementary legislation in particulars where in itself it is not as complete as may be desirable, it will override and nullify whatever legislation, either prior or subsequent, would defeat or limit the homestead which is thus defined and secured." Cooley's Constitutional Limitations (7th ed.), p. 122.

The legislature may pass acts regulatory of the procedure for obtaining a writ of habeas corpus, but it cannot deny to the court of the county in which the petitioner is in custody the right to inquire into the cause of the custody.

"The state constitutions recognize the writ of habeas corpus as an existing remedy in the cases to which it is properly applicable,. and designate the courts or officers which may issue it; but they did not point out the cases in which it may be employed. Upon

this subject the common law and the statutes must be our guide; and although the statutes will be found to make specific provision for particular cases, it is believed that in no instance which has fallen under our observation has there been any intention to restrict the remedy, and make it less broad and effectual than it was at the common law." Cooley's Constitutional Limitations (7th ed.), p. 494.

The constitution does not define a writ of habeas corpus. The term is used in its generic sense. It meant that it was to be applied in accordance with immemorial usage. In other words, it meant that this was one of the rights that was to be reserved to the people, untrammeled and unhampered by the legislature, and to preserve the right was the very purpose of its incorporation in the constitution. A person unlawfully in custody in the state penitentiary is just as illegally in custody as he would be were he in custody at some other place, or in the custody of some person. It is not, therefore, within the power of the legislature to say that some court, other than the court the constitution prescribes, shall have sole authority to inquire into the cause of the custody. Possibly it may confer the power upon some other court, but it cannot make that authority exclusive.

Nor can the legislature say that the right to sue out the writ shall be subject to the will of the person who has the custody of the person who seeks the writ. When, therefore, the legislature said that the right to the writ should depend upon the certificate of the physician in charge of the criminally insane at the penitentiary, and should depend upon the fact whether the warden of the penitentiary gave his consent to the writ, the legislature exceeded its powers. Since the constitution gives to the superior court power to issue writs, any act of the legislature which deprives the superior court of that right, or hampers the superior

court in the exercise of the right, must be of necessity a violation of the constitution.

The constitution of Wyoming (art. V, §§ 3 and 10), provides that the supreme court of that state shall have original jurisdiction in habeas corpus; that each of the judges of the supreme court shall have power to issue writs of habeas corpus, and in any part of the state, upon petition by or on behalf of a person held in actual custody; and that district courts and district court judges have power to issue writs of habeas corpus on petition by or on behalf of any person in actual custody in their respective districts.

In *Byers v. Solier,* 16 Wyo. 232, 93 Pac. 59, a petition for habeas corpus was presented to the chief justice of the supreme court on behalf of Byers, alleged to be unlawfully restrained of his liberty at the state hospital for the insane by Dr. Solier, superintendent of that institution. A similar application was denied by the district judge in whose district the hospital was located. It was contended by the superintendent of the hospital that, when one who had been lawfully committed to the state hospital for the insane claimed to have been restored to his right mind, or to have recovered sufficiently to authorize his release, his remedy was not habeas corpus, but by application for an inquiry into the facts before the court or judge before whom the proceedings were had resulting in the original commitment, pursuant to the provisions of §§ 4894 and 4895, Revised Statutes of 1899.

It appears that the district judge denied the writ upon the petition presented to him on the ground that the proceeding authorized by §§ 4894 and 4895, Rev. Stat. 1899, afforded a sufficient remedy, and that the restoration to his right mind of a legally committed inmate of the insane asylum was not therefore a matter

that should be determined on habeas corpus. The sections referred to read as follows:

"Section 4894. If any person shall allege in writing, verified by oath or affirmation, that any person declared to be of unsound mind has been restored to his right mind, the court or judge by which the proceedings were had shall cause the facts to be inquired into by a jury: Provided, that, before such matter shall be submitted to a jury, it shall be the duty of the court to ascertain and determine whether the proceeding mentioned in this section is instituted and prosecuted in the interest of the person so declared to be of unsound mind; and, if found not to be so instituted and prosecuted, the court shall dismiss said proceeding at the cost of the person instituting the same; but if found to be in the interest of the person declared to be of unsound mind, the said matter shall be submitted to a jury, as in this chapter provided. In ascertaining and determining the interest as aforesaid, the court shall have power to examine under oath any and all persons, including the person declared to be of unsound mind.

"Section 4895. The court shall cause notice of the trial to be given to the guardian of the person so declared insane or incompetent, if there be a guardian, and to his or her husband or wife, if there be one, or to his or her father or mother, if living in the county. On the trial, the guardian or relative of the person so declared insane or incompetent, and, in the discretion of the court, any other person, may contest the right to the relief demanded. Witnesses may be required to appear and testify as in civil cases, and may be called and examined by the court on its own motion. If it be found that the person be of sound mind, and capable of taking care of himself and his property, his restoration to capacity shall be adjudged, and the guardianship of such person, if such person be not a minor, shall cease."

The court stated that the effect of §§ 4894 and 4895 in relation to the right to the writ was presented and considered at the preliminary hearing, and that the

question was again raised by the answer and return of the defendant, Solier. Notwithstanding the statutory proceedings thus provided for, the supreme court concluded that the writ might be issued. The court said:

"Indeed, § 4895 seems to imply that the party whose restoration to capacity is sought may be without a guardian. Whether the proceedings may be instituted for the further purpose of procuring by judicial order a release from the insane hospital, or from any other restraint, is a more serious question, and we think may be subject to some doubt. We are of the opinion, however, that it is unnecessary to decide that question in this case. Our comments in relation to the matter have been for the purpose of suggesting to those interested the unsatisfactory, if not doubtful condition of our statutes regarding the remedy for the discharge upon recovery of one committed to the hospital for the insane, since it is a subject that can be and clearly ought to be regulated by legislative enactment, within reasonable constitutional restrictions. If it should be conceded that the legality of the confinement of a party in the asylum, whose sanity or soundness of mind is alleged, may be determined in the aforesaid statutory proceeding, and his release enforced thereby, we are of the opinion, nevertheless, that the courts and the judges thereof are not divested by the statute of their jurisdiction conferred by the constitution to issue writs of habeas corpus on petition by or on behalf of any person in actual custody. Const., Art. V, §§ 3, 10. Moreover, we observe nothing in the statute in question to indicate a legislative attempt to interfere with that jurisdiction. If the statute had clearly authorized an order for a party's release from custody by the proceeding provided for, it might, perhaps, have afforded a sufficient reason for requiring a resort to it before the issuance of a writ of habeas corpus; though in such event we are satisfied that the power would exist to issue the writ and determine the legality of the restraint without compelling a resort in the first instance to the statutory proceeding."

The constitution of Maryland provides that all judges shall be conservators of the peace throughout the state, and that the legislature shall pass no law suspending the privilege of the writ of habeas corpus. Under that provision, it was held in *State v. Glenn,* 54 Md. 572, that a legislative attempt to limit the jurisdiction of the circuit court in habeas corpus proceedings to persons confined within their circuit was nugatory, and that a judge of such court had jurisdiction to issue a writ of habeas corpus though it was directed against a person outside of his circuit.

In *People ex rel. Patrick v. Frost,* 133 N. Y. App. Div. 179, 117 N. Y. Supp. 524, it was held that the provision of the statute providing that the application for the writ of habeas corpus may be made to the appellate division of the supreme court only "where the person is detained within the judicial district within which the term is held," was void as being beyond the power of the legislature to enact. The court said:

"A point in the case, but not raised by the parties, may be noticed. The application for the writ was made in vacation to Mr. Justice Gaynor, who made it returnable before this court, of which he is a member. With reference to the supreme court the Code of Civil Procedure (Sec. 2017) provides that the application for the writ must be made to either 'a justice of the supreme court, in any part of the state,' or 'the supreme court at a special term or the appellate division thereof, where the prisoner is detained within the judicial district within which the term is held.' This term of this court is not held within the judicial district where the prisoner is detained. But the writ of habeas corpus at common law is beyond legislative limitation or impairment, and it is declared that every court and officer having power to grant the writ and to pass upon the legality of an imprisonment, 'has and may exercise, in the forms prescribed by law, all the power exercised at common law by the court of king's bench in England, and the supreme court of this state, as the cor-

responding tribunal with us.' *(People ex rel. Tweed v. Liscomb,* 60 N. Y. 567.) In *Ex parte Clark* (100 U. S. 399) it is said that it was the practice of the English judges in cases of consequence or difficulty to postpone the case for the whole court, and that under the habeas corpus act it was the regular course to take bail and to require the party to appear in the king's bench or assizes, though the judge would discharge absolutely if the case were one of illegal imprisonment, citing authorities. (See, too, 3 Black Comm. 132.) Church on Habeas Corpus says (2nd ed., p. 70) : 'At one period it was thought that the writ of habeas corpus *ad subjiciendum*—which was only for matters of crime—could issue out of the king's bench only in term time; but *Watson's* case (9 Ad. & El. 731) settled it that the king's bench, or a judge thereof, might grant the writ, at common law, in vacation, and that it might be made returnable immediately either before the court or before a judge at chambers.' In *People v. McLeod* (1 Hill 377), Cowen, J., made the writ returnable before the court. The supreme court in all of its divisions is but one court, and its appellate division has all the powers and general jurisdiction thereof, except when limited by law [citing cases]. The limitation upon its jurisdiction in habeas corpus is beyond the legislative control.''

The act of 1907, as construed by the relator, also, violates another provision of the constitution. By § 4, Art. IV of that instrument, the supreme court and each of the judges thereof are vested with power to issue writs of habeas corpus:

''The supreme court shall also have power to issue writs of . . . habeas corpus, . . . Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself, or before the supreme court, or before any superior court in the state, or any judge thereof.''

These rights are denied the person in illegal custody

if this act of the legislature is construed to prescribe that the authority to inquire into the cause of the custody shall vest exclusively in the committing court.

The authority conferred by the constitution upon the courts to issue writs of habeas corpus can not be restricted by statute. The act of 1907, in attempting to grant to the committing court exclusive jurisdiction to issue writs of habeas corpus, is an invasion of the constitutional authority of the courts. It follows that the act of 1907 did not in any way affect the jurisdiction of the superior court for Walla Walla county to inquire into the sanity of the petitioner.

The application for the writ should be denied and the alternative writ quashed.

FULLERTON, J., concurs with MILLARD, J.