[No. 15139.    Department Two.    March 3, 1919.]

THE STATE OF WASHINGTON, *on the Relation of Charles Thomson, Plaintiff*, v. MILES L. CLIFFORD, *Judge etc., Respondent.*[1]

INSANE PERSONS (5)—DISABILITIES—RESTORATION TO SANITY—DISCHARGE—JURISDICTION.  Where restoration to sanity is claimed since a valid commitment to the asylum, the superior court of that county has jurisdiction in habeas corpus to determine the question, although the commitment was by the superior court of another county.

SAME.  Under Rem. Code, § 5967, authorizing the superintendent of any hospital for the insane to discharge any person who has become sane, a person claiming restoration to sanity since a valid commitment must first apply to the superintendent before seeking a discharge by habeas corpus proceedings.

HABEAS CORPUS (10-1)—DEFENSES—LEGAL COMMITMENT OF INSANE.  It is a good defense to habeas corpus proceedings to obtain a discharge from an asylum upon restoration to sanity that the relator was lawfully committed to the asylum for the insane and had made no application to the superintendent for a discharge and was not in fact restored to sanity so as to be safe to be at large.

Application for a writ of mandamus, filed in the supreme court, November 22, 1918, to compel the superior court for Pierce county, Clifford, J., to proceed with habeas corpus proceedings.   Denied.

*Harry H. Johnston,* for relator.

*Fred G. Remann, J. W. Selden,* and *Carroll A. Gordon,* for respondent.

MOUNT, J.—This is an application for a writ of mandate to require the lower court to proceed with the trial of an application for a writ of habeas corpus.

In the year 1915 the relator was adjudged insane by the superior court of Chehalis county, and committed to the Western Hospital for the Insane in

[1]Reported in 179 Pac. 90.

Pierce county. On October 25, 1918, the relator filed an application for a writ of habeas corpus, in the superior court of Pierce county, alleging that his detention therein was illegal for the following reasons:

"(1) That your petitioner is sane and not unsafe to be at large.

"(2) That being sane and safe to be at large he is confined, imprisoned and detained in 'The Western State Hospital' for the insane against his wishes and demands for his release and upon the pretext that he is insane and unsafe to be at large.

"Wherefore your petitioner prays that a writ of habeas corpus may be granted, . . ."

In answer to this petition, the superintendent of the hospital, after denying the allegations in the petition, filed a further and separate answer to the effect that the relator had theretofore been adjudged to be insane and unsafe to be at large and was committed to the Western State Hospital, in Pierce county, under a judgment of commitment which was made a part of the answer; that, at all times since the delivery of the relator to the hospital, the relator has been held and confined in custody at said institution, and at the time of the service of the writ herein was, and ever since has been, held and detained by the respondent as acting superintendent, under and by virtue of said judgment and commitment; that the relator has not been paroled or discharged from the hospital, either by the superintendent or by the order of any court or judge; that said judgment of commitment has not been altered, modified or vacated, nor has the superior court for Chehalis county made any other or further order or judgment affecting the said petitioner or his said commitment and custody. After this answer was filed, it was admitted that the allegations of the further answer of the respondent were true. The trial

court thereupon concluded that, (1) it had no juris-
diction, and (2) that the facts stated in the answer of
the superintendent constituted a defense to the writ
of habeas corpus. The court was about to dismiss the
proceeding, when this application was made to this
court.

The respondent relies upon the case of *In re Char-
trand,* 103 Wash. 36, 173 Pac. 728, where we held,
in an application for a writ of habeas corpus where
a child was sent to the Home of the Good Shepherd,
in the city of Seattle from Chelan county, that the
superior court of King county did not have jurisdic-
tion to hear the application for the writ; that the juris-
diction remained in the superior court of Chelan
county. In that case, it will be observed, the applica-
tion for the writ of habeas corpus alleged that the
original order was void. In this case, it is not claimed
that the original order committing the relator to the
insane asylum was void, but it is alleged that he is
now sane and safe to be at large. In the *Chartrand*
case, we held that the superior court committing a
delinquent child to the home in Seattle retained juris-
diction over the child and that such jurisdiction was
a continuing jurisdiction. It is argued by the respond-
ent here that there are many provisions in the act re-
lating to insane patients which give the superior court
a continuing jurisdiction over such cases—which is
no doubt correct—and, if the application here were
based upon the invalidity of the original commitment,
it would seem to follow that a superior court commit-
ting an insane person retained jurisdiction for the
purpose of determining the validity of that order.
But in this case, the validity of that order is not ques-
tioned. It is contended, merely, that the relator is
not now insane. The relator is, no doubt, attempting

to show that he has regained his reason and sanity, and therefore he ought not to be further retained in custody in the asylum. The facts upon which this application is based have arisen since the original commitment, and are, no doubt, at hand at the asylum, and may be proved by persons in attendance there. The convenience of witnesses would seem to be sufficient to require the trial of this question in Pierce county. For the purposes of this case, we are satisfied that the superior court of Pierce county has jurisdiction to determine facts which have arisen subsequent to the original commitment; but we are also satisfied that the facts alleged in the answer and return to the writ of habeas corpus are a sufficient defense to the application for the writ. The statute provides, at § 5967, Rem. Code, as follows:

"Whenever in the judgment of the superintendent of any hospital for the insane any person in his charge shall have so far recovered as to make it safe for such patient and for the public to allow him to be at large, the superintendent may parole such patient and allow him to leave such hospital, and whenever in the judgment of the superintendent any patient under his charge has become sane, mentally responsible and probably free from danger of relapse or recurrence of mental unsoundness, the superintendent shall discharge such patient from the hospital."

The answer of the superintendent to the writ of habeas corpus shows that no application has been made to him for the release of the relator, and that there had been no modification of the original commitment. The answer also denied that the relator had regained his reason and was safe to be at large. In the case of *State ex rel. Martin v. Superior Court,* 101 Wash. 81, 172 Pac. 257, we said:

"In the case at bar, Andrews was not confined to the hospital, but was out on a parole granted by one

of the judges of the superior court of King county; and although it might be held that, when an insane person is confined and in charge of the superintendent of a hospital, he might be required, in the interest of a more orderly procedure, to claim his exemption from restraint by first applying to the superintendent of the hospital, it should not be held when the petition shows that the patient is not so restrained, but is at large under a parole issued by the committing court.''

Here it is conceded that the relator is in custody of the hospital, and has not been discharged or paroled. It was his duty, therefore, under that decision, in the interest of orderly procedure, to apply to the superintendent for discharge; and before he could maintain an action in habeas corpus or other proceeding looking to his discharge, he should have shown, not only his sanity, but that the superintendent had arbitrarily refused to issue a discharge. In the *Martin* case, the petitioner had been discharged. It was, therefore, not necessary in that case to apply for a discharge. But in the case at bar, the petitioner has not been discharged; he has not made application to be discharged; and there is no allegation to the effect that the superintendent of the hospital arbitrarily refuses to issue a discharge or a parole. We are of the opinion, therefore, that the trial court was authorized, under the answer of the superintendent—which is not denied—to discharge the writ and dismiss the proceeding.

The application for the writ will therefore be denied.

HOLCOMB, FULLERTON, MAIN, and PARKER, JJ., concur.