[No. 29335. Department One. June 15, 1944.]

CARL SODERQUIST, *Appellant,* v. W. N. KELLER, *as Superintendent of Western State Hospital, Respondent.*[1]

[1]Reported in 149 P. (2d) 528.

*Harry H. Johnston,* for appellant.

*The Attorney General, L. E. O'Neill, Assistant, Thor C. Tollefson, G. E. Peterson,* and *T. L. DeBord,* for respondent.

JEFFERS, J.—On December 23, 1943, Carl Soderquist filed in the superior court for Pierce county a petition for a writ of *habeas corpus,* which alleged, in substance, that he is unlawfully imprisoned, detained, confined, and restrained of his liberty by Dr. W. N. Keller, superintendent of the Western State Hospital for the insane at Fort Steilacoom, Pierce county, Washington; that such imprisonment, detention, and restraint are illegal, in that Soderquist was committed to the institution as an insane person, but has since recovered his sanity, is now sane, and in full possession of his senses and in a condition to be discharged from such institution, and is probably free from danger of relapse or recurrence of mental unsoundness; that, nevertheless and notwithstanding such facts, Dr. Keller arbitrarily and capriciously refuses to discharge Soderquist, well knowing he is now in a condition to be discharged. Petitioner then prayed that a writ of *habeas corpus* be granted, directed to Dr. Keller, as such superintendent, commanding him to bring Soderquist before the court for the purpose of determining the cause of Soderquist's detention, so that he may be restored to his liberty.

Upon the filing of the petition, an order was obtained for the issuance of a writ, and thereafter a writ was issued to Dr. Keller. The doctor filed an answer to this writ, denying all the allegations of the petition, except the following,

which was admitted: "That the said Carl Soderquist was committed to said Western State Hospital for the insane as an insane person."

Dr. Keller also filed a return to the writ, wherein it is alleged that Carl Soderquist was regularly committed to the Western State Hospital by the Honorable John A. Frater, one of the judges of the superior court for King county, on June 20, 1940. A certified copy of the commitment proceedings is attached to the return and by reference made a part thereof. These proceedings include the complaint, findings of fact, judgment, and physician's certificate.

It is further shown by the return that the commitment has not been altered, modified, or vacated; that petitioner was paroled on October 20, 1940, and returned to the hospital on December 10, 1940; that he was paroled on May 9, 1942, and on June 16, 1942, returned to the hospital; that he was again paroled on November 6, 1942, and returned to the hospital on December 11, 1942; that on August 21, 1943, petitioner, without right, left the hospital grounds and returned August 22, 1943. It is further alleged in the return that petitioner has not become sane and mentally responsible, and that it is the judgment of the superintendent of the hospital that petitioner should not at this time be discharged.

The insanity complaint was signed by Inga Soderquist, petitioner's wife.

The findings of fact show that Dr. Paul Floto, Harriet Bradshaw, Inga Soderquist (wife), and Oscar Soderquist (brother) testified, as did Drs. Nicholson and Baker, who signed the physician's certificate. This certificate is, in substance, as follows: That Drs. Nicholson and Baker are legally qualified physicians; that, at the request and in the presence of Honorable John A. Frater, they heard the testimony of the witnesses, and personally examined Carl Soderquist in reference to the charge of insanity, and find that he is insane.

The medical examination shows that on June 20, 1940, Soderquist was fifty-five years of age; that he was born in Sweden, and has lived in Washington since 1917; that

he is a carpenter by trade; that he is married and has two children. It further appears that, about seven years prior to the examination, Soderquist was struck in the left frontal region by a peavy, which penetrated the brain substance and fractured the skull; that at the present time there is a depression in the frontal bone; that since the accident petitioner has had convulsions.

It appears that Dr. Floto has attended petitioner through the years since the accident, and, according to his reports, petitioner during the past seven years has had repeated osteomyelitis of the frontal bone, with recurrent convulsions.

The following appears in the certificate:

"66. Here give a resume of the evidence of witnesses which you believe describe the patient's condition.

"Dr. Paul G. Floto (physician)— States first saw the man abt 1934 at which time he had a brain abcess due to his injury. Following this he developed an osteo. myl frontal bone which has been chronic since that time in spite of repeated operations. Over the past 5-6 yrs there has been a gradual personality change with memory difficulties; periods of confusion; repeated convulsive attacks; moral and social deterioration. His wife has come in to me many times in terror, because of his attacks, in which he beats her and the children. The children have been threatened and beaten also and all of them are afraid of him. In my judgment he is insane—organic brain disease with psychosis and feel he needs to be hospitalized. Further operative procedure will be of doubtful value for this man because of the fact that his frontal lobe has atrophied and is deeply scarred."

The above correctly states the substance of the testimony of Mrs. Soderquist and the brother, Oscar Soderquist, as well as that of Dr. Floto.

Based upon the testimony which they heard, and upon their examination of Mr. Soderquist, it was the opinion of Drs. Nicholson and Baker that petitioner was insane and dangerous to be at large, and it is apparent that all of the doctors considered petitioner's insanity of a permanent nature, and not temporary.

We have set out this testimony given at the time of the commitment, and the opinion of the doctors, principally for the reason that the only testimony at the hearing on the petition for a writ of *habeas corpus* bearing on the present sanity of petitioner was that of Mr. Soderquist himself.

The cause now before us came on for hearing before the trial court on February 14, 1944, at which time petitioner was present in court and represented by counsel. The trial court, after petitioner had submitted his evidence, granted Dr. Keller's motion to dismiss the petition.

In view of the contention made by counsel for petitioner in his brief, we are of the opinion that the substance of this motion should be set out, and also the judgment of dismissal. The motion was based upon the grounds that there was no evidence to support the allegations contained in the petition for the writ to the effect that the detention and confinement of petitioner by Dr. Keller is illegal, or that Dr. Keller has acted arbitrarily and capriciously in refusing to discharge petitioner; that there is no testimony to the effect that Soderquist has regained his sanity and is at the present time safe to be at large, or safe for the general public to have him at large, nor is there testimony showing that his mental condition has improved.

The order of dismissal, which was made and entered on February 14, 1944, in so far as material, recites:

"And a jury having been impaneled to try said cause, and evidence having been offered on behalf of petitioner, and at the close of petitioner's case motion having been interposed by the attorneys for the respondent challenging the sufficiency of the evidence to sustain said petition, and the matter having been submitted to the court in oral argument, and the court having duly considered the same and deeming itself fully advised in the premises,

"IT IS, NOW, THEREFORE, ORDERED that the petition for a writ of habeas corpus, be, and the same hereby is dismissed."

On February 15, 1944, petitioner filed a motion for a new trial, which was denied by an order entered on February 23, 1944. Petitioner has appealed from the order of dismissal, and assigns error on the granting of the motion to

dismiss, and in refusing to grant petitioner's motion for a new trial.

While appellant, of course, does not admit that the evidence offered by him was insufficient to sustain the allegations of his petition, his chief complaint seems to be that the trial court did not consider the main question to be determined; that is, whether or not appellant had become sane and therefore entitled to be discharged from the hospital. We quote from page 5 of appellant's brief:

"In his oral decision the court ruled that appellant had failed to show that respondent had acted arbitrarily or capriciously and therefore it had no power to do anything [other] than deny the writ. The court gave no intimation as to what he thought of appellant's mental condition."

Appellant further states:

"A motion for new trial was heard and the motion is denied. This denial was based solely on the court's opinion 'that the petitioner had offered no evidence that respondent had acted in an arbitrary or capricious manner and that there was no evidence before the court that respondent had failed to exercise his judgment in the matter.'"

While appellant does not so allege, it was admitted in open court by counsel for respondent that a demand was made upon respondent for appellant's discharge, and such demand refused.

■ It is admitted that the only statute which authorizes a determination of whether or not a person has become sane, after commitment, and entitled to be discharged from the institution to which he was committed, is Rem. Rev. Stat., § 6950 [P. C. § 2843], which provides:

"Whenever in the judgment of the superintendent of any hospital for the insane any person in his charge shall have so far recovered as to make it safe for such patient and for the public to allow him to be at large, the superintendent may parole such patient and allow him to leave such hospital, and whenever in the judgment of the superintendent any patient under his charge has become sane, mentally responsible and probably free from danger of relapse or re-

currence of mental unsoundness, the superintendent shall discharge such patient from the hospital."

*In re Pfeiffer,* 10 Wn. (2d) 703, 118 P. (2d) 158.

However, in *State ex rel. Martin v. Superior Court,* 101 Wash. 81, 172 Pac. 257, 4 A. L. R. 572, after referring to Rem. Code, § 1671, which had given the court authority to inquire into the sanity of a person after his commitment, but which had been repealed at the time the decision in the cited case was written, and after referring to Rem. Code, § 5967, which was the same as the present statute (Rem. Rev. Stat., § 6950), we stated:

"In the same section [Rem. Code, § 5967], it is provided that a judge of the superior court may recommit any person who has been paroled by the superintendent of the hospital.

"The superior courts of this state are courts of general jurisdiction. They have power to hear and determine all matters, legal and equitable, and all special proceedings known to the common law, except in so far as these powers have been expressly denied. The power of the court to discharge a person committed as insane did not depend upon the statute which has been repealed. The court had inherent jurisdiction independent of statute.

"The power of a court to discharge or commit an insane person is an inherent power of a court of equity. It is derived *ex necessitate* from the commonwealth. It rests in the sovereignty just as it rested in the King at common law; and is exercised now by a court of equity just as it was then exercised through the courts of chancery. If the power is bestowed upon another tribunal or person, it does not follow that the court is deprived of its jurisdiction. For the same reason of necessity, it is held that the granted jurisdiction is cumulative and concurrent with that of a court of chancery. [Citing authority.]

"That the superior court has such general powers has been held in the following cases: [Citing them.]

"If this be so, it follows that the repeal of § 1671 did not in any way affect the jurisdiction of the court to inquire into the sanity of a person who may be committed or paroled.

"The power of the court to act independently of the statute is really confessed by counsel, for he grants that the court would have power to hear the issues tendered by the

petitioner if he had brought a *habeas corpus* proceeding. If the court, under its general equity powers, has jurisdiction over insane persons, the remedy or procedure is a matter of secondary consideration; for a court of equity has power not only to decree, but to enforce its decrees in its own way, in the absence of a definite procedure."

In the cited case, the one who had been adjudged to be insane was out on parole at the time he filed his application for a writ of mandate to compel the respondent judge to take jurisdiction of and hear the petition of relator.

■ While in neither the *Martin* nor *Pfeiffer* cases hereinbefore referred to was the matter before the court on a petition for a writ of *habeas corpus*, and while we recognize the general rule as to the extent of the inquiry which can be made at a hearing on a petition for a writ of *habeas corpus*, yet it seems to be generally recognized that, where one is actually in custody by reason of insanity and is detained after he has become sane, such detention is illegal, and may be ended by *habeas corpus* proceedings; and it is generally held that a person committed as insane has the right to have his sanity determined on *habeas corpus*. 25 Am. Jur., p. 209, § 85.

In *State ex rel. Thomson v. Clifford*, 106 Wash. 16, 179 Pac. 90, we recognized the rule that the court had jurisdiction to hear and determine facts which had arisen subsequent to the original commitment; that is, whether or not Thomson had become sane and entitled to be discharged, at a hearing on a petition for a writ of *habeas corpus*. In the cited case, the opinion, after referring to Rem. Code, § 5967, which, as we have stated, was the same as Rem. Rev. Stat., § 6950, the present statute, states:

"The answer of the superintendent to the writ of habeas corpus shows that no application has been made to him for the release of the relator, and that there had been no modification of the original commitment. The answer also denied that the relator had regained his reason and was safe to be at large."

The return in the instant case makes the same denials and allegations, except it is admitted that application was

made to respondent for a discharge, and such application refused.

The opinion in the cited case, after quoting from *State ex rel. Martin v. Superior Court, supra,* then continues:

"Here it is conceded that the relator is in custody of the hospital, and has not been discharged or paroled. It was his [petitioner's] duty, therefore, under that decision [*State ex rel. Martin v. Superior Court*], in the interest of orderly procedure, to apply to the superintendent for discharge; and before he could maintain an action in habeas corpus or other proceeding looking to his discharge, he should have shown, *not only his sanity, but that the superintendent had arbitrarily refused to issue a discharge.* In the *Martin* case, the petitioner had been discharged. It was, therefore, not necessary in that case to apply for a discharge. But in the case at bar, the petitioner has not been discharged; he has not made application to be discharged; and there is no allegation to the effect that the superintendent of the hospital arbitrarily refuses to issue a discharge or a parole. We are of the opinion, therefore, that the trial court was authorized, under the answer of the superintendent—which is not denied—to discharge the writ and dismiss the proceeding." (Italics ours.)

We have quoted quite fully from the last cited case, as it seems to deal directly not only with the allegations which must be made in a petition for a writ of *habeas corpus* by one who has been lawfully committed as insane and who claims that he has subsequently become sane and is entitled to be discharged, and who is actually in the custody of and arbitrarily detained by the superintendent of the hospital to which such person was committed, but it also deals with the proof that must be made by such person.

Of the cases from this state called to our attention, the only ones which came before the court on a petition for a writ of *habeas corpus* are *In re Brown,* 39 Wash. 160, 81 Pac. 552, 109 Am. St. 868, 1 L. R. A. (N. S.) 540, to which we shall later refer, and *State ex rel. Thomson v. Clifford, supra.* In both the *Martin* and *Pfeiffer* cases, the insane person was out on parole, or at least he was not in the actual custody of the superintendent at the time the application was made

to the court to have the question of his sanity determined. In the *Brown* and *Thomson* cases, the petitioner was in the actual custody of the superintendent at the time of filing the petition for a writ.

From a reading of the cases hereinbefore referred to, it seems to us that the rule has been established in this state that, when a person has been lawfully committed by the court to a hospital for the insane, and claims to have become sane since such commitment and hence entitled to have a hearing before the court, the court has jurisdiction to hear and determine the question of the applicant's sanity.

When the applicant is not in the actual custody of the superintendent at the time he makes such application, he is not required to allege or prove that he has, prior thereto, made application to the superintendent for a discharge and such application refused, but all he is required to allege and prove is that he was committed, and that since the commitment he has become sane, mentally responsible, and probably free from danger of relapse or recurrence of mental unsoundness, the burden being upon the applicant, at least where it appears that the type of insanity with which he was afflicted was not of a temporary character, to prove such sanity. Where, however, a person has been lawfully committed to an insane hospital, and is in the actual custody of the superintendent, and desires a hearing on the question of his regained sanity, he is entitled to such hearing before the court upon the filing of a petition for a writ of *habeas corpus*. Where, however, it is claimed, as in the instant case, that the superintendent has arbitrarily refused to discharge him, he must allege in his petition his commitment, that he has become sane since such commitment, and that application has been made to the superintendent for a discharge and such application arbitrarily refused by the superintendent. In a case such as last mentioned, the burden is upon the petitioner not only of showing that he has recovered his sanity and that he is probably free from danger of relapse or recurrence of mental unsoundness, but also that the superintendent did arbitrarily refuse to issue a discharge.

It would seem, as a practical proposition, that the question of whether or not the superintendent had arbitrarily refused to issue a discharge after application made to him would depend very largely on whether or not the applicant had in fact become sane and mentally responsible, and that if the petitioner was able to show that he was sane and entitled to be discharged it would follow, or at least be sufficient proof, that the superintendent had been arbitrary in not issuing to him a discharge. We are not of the view that, in this type of proceeding, merely because the superintendent of an insane hospital is of the opinion that one committed has not become sane and entitled to be discharged, such fact in and of itself is sufficient to show that such superintendent was not arbitrary, nor is such fact sufficient to justify the court in refusing to order a person discharged, if it appears by substantial evidence that the petitioner has become sane and mentally responsible and probably free from danger of relapse or recurrence of mental unsoundness.

We have hereinbefore referred to the case of *In re Brown,* 39 Wash. 160, 81 Pac. 552. At this time we desire to call attention to a quotation therein contained, from Schouler, Wills (3d ed.), § 189:

" 'The presumption being that general insanity once shown to exist still continues, unless of a temporary sort, like the delirium of drunkenness or a fever, the burden of proof to establish a lucid interval or mental restoration rests upon the party who asserts it.' "

The facts in this case, including the testimony of appellant, certainly show that the form of insanity with which appellant was afflicted was not of a temporary sort, and therefore the burden was cast upon appellant to establish by substantial evidence that he had become sane.

The only evidence introduced in this case on the question of the present mental condition of appellant was his own. We have carefully considered appellant's testimony, and, while it is reasonably coherent, we are of the opinion it does not establish that appellant has in fact become sane and entitled to be discharged. Having reached

this conclusion, we are also of the opinion it does not appear that respondent was arbitrary and capricious in refusing to grant appellant a discharge.

In view of the above conclusions, it follows that the trial court did not err either in granting respondent's motion challenging the sufficiency of the evidence, or in denying the motion for new trial.

We do not desire to be understood as holding that in a hearing of this character it is necessary for the petitioner to produce testimony of experts, that is, doctors, favorable to his contention that he has become sane, there being no statutory requirement that the court have the testimony of doctors before it can adjudicate that a person has become sane, as there is that medical testimony be procured before a person can be committed as insane.

In conclusion may we call attention to the fact that the order of dismissal was a general order, and it must be assumed that in entering it the court had in mind that appellant had not only failed to prove that the superintendent had acted arbitrarily in refusing to issue a discharge, but had failed to prove that appellant had become mentally responsible and entitled to a discharge.

For the reasons herein assigned, the trial court committed no error in entering the order of dismissal or in denying the motion for new trial, and the order dismissing the petition is therefore affirmed.

SIMPSON, C. J., BEALS, STEINERT, and GRADY, JJ., concur.