[No. 43882.    En Banc.    May 6, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. ROSA NATALIE
KENT, ET AL, *Appellants*.

*William R. Garland,* by *J. Steven Thomas,* for appellant Kent.

*Ronald D. Ness,* for appellant Hammon.

*John C. Merkel, Prosecuting Attorney,* and *Warren K. Sharpe, Deputy,* for respondent.

HOROWITZ, J.—Defendants Rosa Natalie Kent and Paul John Hammon appeal an order of the trial court denying their motions to dismiss proceedings against them under the Washington Habitual Traffic Offenders Act (RCW 46.65) upon the ground the act violates the equal protection clause of the Fourteenth Amendment and the privileges and immunities provision of the state constitution (Const. art. 1, § 12).

The facts are these. On November 3, 1973, Rosa Natalie Kent was charged with being a habitual traffic offender under RCW 46.65. Her driving record shows from November 13, 1968, to September 30, 1973, she accumulated 20 or more convictions or bail forfeitures for various moving violations. None of these violations was alcohol-related.

On March 18, 1974, Paul John Hammon was similarly charged with being a habitual traffic offender. His driving record shows three convictions in February 1974, in Kitsap County Superior Court for driving while his license was suspended. None of the offenses was alcohol-related. On October 21, 1974, Hammon was found to be a habitual traffic offender by the Kitsap County Superior Court. The court ordered the defendant's driver's license revoked for 5 years.

On November 15, 1974, Hammon moved for an order vacating the judgment on the ground RCW 46.65 violates the equal protection clause of the federal constitution. On November 25, 1974, Hammon appeared in Kitsap County Superior Court to argue the motion. Rosa Natalie Kent also appeared to argue her oral motion to dismiss the charge against her. The court denied the motions on November 29, 1974. On the same day the court found Rosa Natalie Kent to be a habitual traffic offender under RCW 46.65 and re-

voked her driver's license for 5 years, the order to be stayed pending appeal.

On July 19, 1975, the Court of Appeals, Division Two, ordered defendants' appeals consolidated since they present the same constitutional questions. On July 21, 1975, the appeals were certified to this court by the Court of Appeals pursuant to RCW 2.06.030 (e).

The defendants contend RCW 46.65.060 denies them equal protection of the laws in violation of the equal protection clause of the federal constitution and privileges and immunities clause of our constitution. U.S. Const. amend. 14; Const. art. 1, § 12.

A proper understanding of this contention requires a brief review of Washington's Habitual Traffic Offenders Act (RCW 46.65). The provisions of the act, as originally enacted in 1971 (Laws of 1971, 1st Ex. Sess., ch. 284, p. 1486), are summarized in *State v. Scheffel*, 82 Wn.2d 872, 874-76, 514 P.2d 1052 (1973), as follows:

The policy of the act is stated in RCW 46.65.010, which provides:

It is hereby declared to be the policy of the state of Washington:

(1) To provide maximum safety for all persons who travel or otherwise use the public highways of this state; and

(2) To deny the privilege of operating motor vehicles on such highways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the state, the orders of her courts and the statutorily required acts of her administrative agencies; and

(3) To discourage repetition of criminal acts by individuals against the peace and dignity of the state and her political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws.

To achieve this goal, RCW 46.65.020 (1) provides for the license revocation of anyone who, within a five-year period receives

Three or more convictions, singularly or in combination, of the following offenses:

(a) Negligent homicide as defined in RCW 46.61.520; or

(b) Driving or operating a motor vehicle while under the influence of intoxicants or drugs; or

(c) Driving a motor vehicle while his license, permit, or privilege to drive has been suspended or revoked; or

(d) Failure of the driver of any vehicle involved in an accident resulting in the injury or death of any person to immediately stop such vehicle at the scene of such accident or as close thereto as possible and to forthwith return to and in every event remain at, the scene of such accident until he has fulfilled the requirements of RCW 46.52.020.

RCW 46.65.030 requires that the director of the Department of Motor Vehicles certify transcripts of any person coming within the definition of an habitual offender to the prosecuting attorney of the county in which the person resides. Under RCW 46.65.040 the prosecuting attorney is required to file a complaint against the person named in the transcript. Pursuant to RCW 46.65.050, the court in which the complaint is filed enters an order to the defendant to show cause why he should not be barred as an habitual offender from operating any vehicle on the highways of this state.

The hearing is governed by RCW 46.65.060, which basically limits the hearing to determining whether or not the person named in the complaint is the person named in the transcript and whether or not the person is an habitual offender as defined. If the court answers both of these questions in the positive, then the defendant's license is revoked for 5 years. After 2 years one whose license has been suspended may petition for the return of his operator's license.

In 1972 the Uniform Alcoholism and Intoxication Treatment Act was enacted in Washington. Laws of 1972, 1st Ex. Sess., ch. 122, p. 297, codified in RCW 70.96A. This act declares it the policy of this state that treatment replace punishment as the appropriate mechanism for dealing with alcoholics and intoxicated persons. RCW 70.96A.010. The

act also mandates a comprehensive treatment program for persons with alcohol problems, to be administered by the State's Department of Social and Health Services. RCW 70.96A.030-.050. In accordance with the policy of the alcoholism treatment act, the following provision was added to RCW 46.65.060 in 1973:

> *Provided,* That a judge may stay the effective date of the order declaring the person to be a habitual traffic offender if he finds that the traffic offenses upon which it is based were caused by or are the result of the alcoholism of the person, as defined in RCW 70.96A.020, as now or hereafter amended and that since his last offense he has undertaken and followed a course of treatment for alcoholism on a program approved by the department of social and health services; notice of such stay shall be entered on the copy of the order filed with the department of motor vehicles. Said stay shall continue as long as there is no further conviction for any of the offenses listed in RCW 46.65.020(1). Upon a subsequent conviction for any offense listed in RCW 46.65.020(1), the stay shall be removed and the department of motor vehicles shall revoke the operator's license for a period of five years.

Laws of 1973, 1st Ex. Sess., ch. 83, p. 678.

The defendants, as stated, attack the constitutionality of this 1973 proviso. They argue the proviso is constitutionally infirm because it does not " 'rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " *Reed v. Reed,* 404 U.S. 71, 76, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971), *quoting Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 64 L. Ed. 989, 40 S. Ct. 560 (1920). The purpose of the act to promote safety on the highways (RCW 46.65.010) is defeated, defendants argue, by permitting those convicted of alcohol-related driving offenses to retain their licenses pursuant to RCW 46.65.060. In addition, defendants argue the proviso discriminates unfairly against other habitual traffic offenders (such as those whose traffic offenses are drug related, due to epilepsy, or to poor driving habits) who are not

afforded a treatment option and don't receive a stay of their license revocation. Defendants assert that treatment programs for drivers with poor driving habits are available. RCW 46.81 and 46.83.

We disagree with defendants, hold Washington's Habitual Traffic Offenders Act as amended in 1973 to be valid and affirm the judgments below.

We first note defendants do not contend that in this case the provision of the federal and state constitutions on which they rely do not mean the same thing. Both constitutional provisions in question may be said here to "have the same import, and we apply them as one." *Markham Advertising Co. v. State*, 73 Wn.2d 405, 427, 439 P.2d 248 (1968).

▬ There are two answers to defendants' contentions. First, even if the proviso were held invalid, this could not affect defendants' status as habitual traffic offenders. The proviso is severable, and the defendants having been adjudicated as habitual traffic offenders under the act in its original form, they would still be subject to the provisions of a statute upheld as valid in *State v. Scheffel, supra.* The severability clause applicable to RCW 46.65 states:

> If any provision of this 1971 amendatory act, or its application to any person or circumstance is held invalid, the remainder of the act, or the application of the provision to other persons or circumstances is not affected.

Laws of 1971, 1st Ex. Sess., ch. 284, § 17, p. 1492. With this clause, the proviso is severable leaving the original act intact.

> It is a well-recognized rule of constitutional law that, where the unconstitutional portion of an act is severable from the rest, the portion which is constitutional may stand, and that which is unconstitutional may be stricken out and rejected.

*State v. Grabinski*, 33 Wn.2d 603, 612, 206 P.2d 1022 (1949). The statute would also be severable independently of the severability clause, since there can be little question the legislature would have passed the act without the proviso. *See Unemployment Compensation Dep't v. Hunt*, 17 Wn.2d

228, 240, 135 P.2d 89 (1943); 2 C. Sands, *Statutes and Statutory Construction* §§ 44.09, .13 (4th ed. 1973). In fact, it did so. There is no reason to believe that if the amendment were held invalid the legislature would repeal the act in its original form.

A similar result was reached in *Unemployment Compensation Dep't v. Hunt, supra,* a case involving an equal protection attack upon an exception to the general provisions of the Unemployment Compensation Act. The court states at pages 239-40:

> Appellant further contended, before the commissioner and, presumably, before the superior court, that the exemption of insurance agents and solicitors, to the extent that they are compensated by commissions, renders the act unconstitutional because it constitutes an arbitrary and unreasonable classification of persons, based on method of compensation alone. If appellant should prevail in this contention, it would still avail him nothing, for, if that particular section of the statute were declared invalid, it would merely result in subjecting insurance companies and their agents, as well as the appellant and his salesman, to the general operation of the act.
>
> . . .
> . . . Moreover, we do not believe that, if the legislature had thought that this one provision would be declared unconstitutional, it would have hesitated for an instant to pass the remainder of the act.

Moreover we find no basis for defendants' claim that the proviso in RCW 46.65.060 alone, or in the act with the proviso, is invalid under either the federal equal protection clause or the privileges and immunities provision of the state constitution.

■ The burden of proving the provision in RCW 46.65.060 violates these constitutional provisions is upon defendants. *Brewer v. Copeland,* 86 Wn.2d 58, 61, 542 P.2d 445 (1975), states:

> In contending RCW 46.08.080 violates plaintiff's equal protection rights, plaintiff undertakes a heavy burden of persuasion. . . . She must overcome the presumption of constitutionality beyond a reasonable doubt.
> . . . When a statutory classification is challenged, it

is presumed that facts sufficient to justify the classification exist. . . . Merely challenging the wisdom or expediency of the statute is not enough.

■ First, defendants have not shown beyond a reasonable doubt RCW 46.65.060 is contrary to the purposes of the act as stated in RCW 46.65.010. RCW 46.65.010(2) states one purpose of the act is to deny licenses to those who have shown "indifference" to the safety of others and "disrespect" for highway laws. Alcoholics, however, are considered by the legislature to be suffering from an illness (RCW 70.96A), and there may be no conscious or voluntary "indifference" or "disrespect" in their behavior. In addition, other purposes of the act are to "discourage repetition of criminal acts", RCW 46.65.010(3), and to provide "maximum safety" for persons who use the public highways. RCW 46.65.010(1). The proviso is not necessarily contrary to these purposes either, since any stay under RCW 46.65.060 continues only "as long as there is no further conviction for any of the offenses listed in RCW 46.65.020(1)." If there is, the "stay shall be removed." RCW 46.65.060.

■ Second, the defendants have not shown RCW 46.65.060 unfairly discriminates against habitual traffic offenders whose violations are not alcohol-related. We are not convinced the proviso is invalid simply because it does not provide an opportunity for these offenders to undergo a treatment program and retain their licenses. That alcoholism is a serious social and health problem requiring special legislation cannot be disputed. Thus the first section of the Alcoholic and Narcotic Addict Rehabilitation Act of 1968, 42 U.S.C. §§ 2688e *et seq.* (1970) states in part:

(a) . . .
The Congress hereby finds that—
(1) Alcoholism is a major health and social problem afflicting a significant proportion of the public, and much more needs to be done by public and private agencies to develop effective prevention and control.

*See generally* Note, 50 Wash. L. Rev. 755 (1975). The

Washington legislature may have considered the problem of the alcoholic (as defined in RCW 70.96A.020(1)) *driver* to be a particularly serious one; more so than the problem of the driver whose traffic violations arise from poor driving habits or some other source. Forty percent of fatal automobile accidents in Washington in 1974 were caused by alcohol. Office of Program Planning & Fiscal Management, State of Washington, *Pocket Data Book 1975* 154 (1976). Specific attention by the legislature to the drinking driver may also have been prompted by the availability of a comprehensive, state-run treatment program for alcohol-related problems. RCW 70.96A.030-.050. There is no comparable program available for drivers with simply poor driving habits. RCW 46.83 provides only for *local* traffic schools, which a city, town, or county *may* establish, and RCW 46.81 deals only with *high school* driver education courses.

The problem of the driver whose traffic offenses are related to drug use or epilepsy are not before us since defendants do not contend they come within either category. One cannot urge the unconstitutionality of a statute unless he is harmed by the particular feature of the statute challenged. *State v. Lundquist*, 60 Wn.2d 397, 374 P.2d 246 (1962).

Finally, equal protection does not require that a state choose between attacking every aspect of a problem and not attacking the problem at all. *Washington Statewide Organization of Stepparents v. Smith*, 85 Wn.2d 564, 571, 536 P.2d 1202 (1975). The legislature has the discretion not to deal with an evil or class of evils all within the scope of one enactment, but to approach the problem piecemeal and learn from experience. *McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 809, 22 L. Ed. 2d 739, 89 S. Ct. 1404 (1969).

Judgments affirmed.

ROSELLINI, HUNTER, HAMILTON, UTTER, and BRACHTEN-BACH, JJ., and HENRY and RUMMEL, JJ. Pro Tem., concur.