[No. 4091–1. Division One. April 11, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD E. MCCARTER, *Appellant*.

*Richard P. Blumberg* of *Institutional Legal Services,* for appellant.

*James E. Carty, Prosecuting Attorney,* and *John J. Hilzer, Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

The petitioner, an adjudged sexual psychopath, appeals from an order denying his release from custody and returning him to a state mental institution for continued treatment.

When apprehended, the petitioner admitted having committed sexual offenses against children. He was initially charged with two counts of a morals offense for which, if convicted, he could have been sentenced up to 20 years in a

state penal institution on each count with the sentences to run consecutively.

As a result of plea bargaining, however, the petitioner pleaded guilty to two reduced charges of contributing to the delinquency of a minor, which were punishable by a maximum sentence of 1 year in the county jail on each charge. Before sentencing on the reduced charges, the prosecuting attorney instituted sexual psychopathy proceedings pursuant to RCW 71.06, and petitioner was sent to Western State Hospital for observation. Subsequently, following a hearing, the court found that petitioner was a sexual psychopath and committed him to a state hospital for care and treatment rather than to the county jail, and to be returned to the custody of the county sheriff "upon completion of the treatment and hospitalization period." The time spent in the hospital is credited on his sentence. RCW 71.06.120.

The matter which is now before us arose when, approximately 2 years after his original commitment, petitioner was brought before the trial court for a hearing to determine whether he should be released from custody. The trial court decided that petitioner was still a sexual psychopath, was not safe to be at large, and returned him to Western State Hospital for an indefinite stay. In making this decision, the trial court found that petitioner had not carried his burden of proving it was "highly probable" or by a "preponderance of the evidence" that he was safe to be at large.

In reviewing the record, two features stand out. One is that the petitioner has not and does not contend that he was unfairly or improperly adjudged to be a sexual psychopath in the first instance. The other is that he showed substantial progress during his treatment in the hospital when he tried, but he did not show progress when he did not try, and he quit trying. As the trial court was constrained to remark in the detailed memorandum opinion filed following the release hearing,

knowing full well the consequences of his actions, and having the power to at least attempt to bring about a

positive change, [he] stands like a durable island surrounded by a sea of treatment, unmoved and unyielding despite his ability to do otherwise.

Petitioner brings this appeal from the decision of the trial court.

## ISSUES

ISSUE ONE. Did the trial court err in requiring petitioner, as an adjudged sexual psychopath, to prove that he was safe to be at large before the court would release him?

ISSUE TWO. Does the sexual psychopath law, RCW 71.06, deny due process of law or fair treatment because of deficient statutory release procedures?

ISSUE THREE. Does the sexual psychopath law deny due process of law or fair treatment because it permits indefinite commitments?

## DECISION

ISSUE ONE.

CONCLUSION. When a person has been committed as a sexual psychopath and seeks release from custody, the burden of persuasion is upon the petitioner, and before discharge from custody is granted, the trier of fact must find it highly probable that the petitioner is no longer a sexual psychopath and is a safe person to be at large.

This proceeding does not involve whether or not the petitioner is a sexual psychopath and should be hospitalized and treated as such. That was determined earlier. What is involved is whether a person who, when committed, was by definition "a menace to the health or safety of others," should now be released. RCW 71.06.010.

The situation presented is directly analogous to that with which our State Supreme Court dealt when it had before it the question of the burden of proof on one seeking discharge from confinement as a criminally insane person. That question was not answered by the criminally insane discharge statute, RCW 10.77.120, as the question in this case is not resolved by the sexual psychopath discharge statute, RCW 71.06.010. As the Supreme Court there expressed it,

the issue before the court confronted with his release petition, was whether or not the defendant, if released, would present a danger to himself or society. The petitioner's prior behavior, including the criminal act precipitating the state's concern (that is, the act of taking another's life), merely served to bring about a judicial determination that he should be treated in a medical setting rather than simply confined in a penitentiary. Having made this determination, society is now concerned solely with his future behavior and in striking a balance between the public safety and our concern for individual liberty, it is entirely appropriate that he not be released until the jury finds it highly probable that he is no longer a danger to himself or to others.

*State v. Blubaugh*, 80 Wn.2d 28, 37, 491 P.2d 646 (1971).

■ The same reasoning applies in this case as in *Blubaugh*. We hold that a sexual psychopath seeking release from custody has the same burden of proof as a criminally insane person seeking discharge from custody as established in *Blubaugh*.

Here the trial court found that the petitioner did not meet his burden of proof, by whatever standard, and concluded that he "remains a sexual psychopath, is not safe to be at large, and should be returned to the Department of Social and Health Services pursuant to RCW 71.06." This was a proper determination.

ISSUE TWO.

CONCLUSION. The absence of any express release provisions from the sexual psychopath statute is not a fatal flaw in that enactment, because a person committed as a sexual psychopath has the right to proceed under the habeas corpus statute, RCW 7.36.010, to initiate proceedings to determine his safeness to be at large.

■ Although the sexual psychopath release statute, RCW 71.06.091, does not specify a means by which a person committed as a sexual psychopath can initiate proceedings to determine that he is safe to be at large, such a right nevertheless exists. It has been well established in involuntary hospitalization cases in this state that for one seeking release from commitment,

if there be no statutory judicial remedy, habeas corpus is necessarily the proper judicial remedy." *State v. Tugas,* 39 Wn.2d 241, 245, 234 P.2d 1082 (1951) quoting with approval from *State ex rel. Colvin v. Superior Court,* 159 Wash. 335, 343, 293 P. 986, 73 A.L.R. 555 (1930). *Accord, In re Pfeiffer,* 10 Wn.2d 703, 710, 118 P.2d 158 (1941); *Soderquist v. Keller,* 21 Wn.2d 1, 8, 149 P.2d 528 (1944); *Durham v. Callahan,* 42 Wn.2d 352, 255 P.2d 374 (1953).

■ It is likewise true that the release statute, RCW 71.06.091, did not expressly grant petitioner the right to be present with counsel, have an opportunity to be heard, be confronted with evidence against him, or have the right to cross–examine and to offer evidence on his own behalf. These rights were, however, accorded to the petitioner at the release hearing herein. One cannot urge the unconstitutionality of a statute unless harmed by the particular feature of the statute challenged. *State v. Lundquist,* 60 Wn.2d 397, 401, 374 P.2d 246 (1962); *State v. Kent,* 87 Wn.2d 103, 111, 549 P.2d 721 (1976).

■ Due process is an elusive concept. Its exact boundaries are indefinable and its content varies according to specific factual contexts. As a generalization, it can be said that due process embodies the differing rules of fair play, which through the years have become associated with differing types of proceedings. *Hannah v. Larche,* 363 U.S. 420, 442, 4 L. Ed. 2d 1307, 80 S. Ct. 1502 (1960); *Hystad v. Rhay,* 12 Wn. App. 872, 878, 533 P.2d 409 (1975). The procedures employed at the release hearing fully met this concept of due process.

ISSUE THREE.

CONCLUSION. Legislation does not violate constitutional rights of due process nor of fair treatment merely by providing for indefinite commitment when there is a valid state interest in providing for such commitments.

■■ Sexual psychopath statutes are a relatively recent development in the law. They are designed to cope with

offenders who because of a psychopathic condition commit sexual offenses. They recognize that the sexual psychopath is neither normal nor legally insane and, for that reason, requires special treatment both for his own sake and for the safety of society. *Statutes Relating to Sexual Psychopaths*, Annot., 24 A.L.R.2d 350, 351 (1952).

Such statutes have usually been upheld as valid exercises of the state's police power. *Minnesota ex rel. Pearson v. Probate Court*, 309 U.S. 270, 84 L. Ed. 744, 60 S. Ct. 523, 126 A.L.R. 530 (1940); *State ex rel. Pearson v. Probate Court*, 205 Minn. 545, 287 N.W. 297 (1939); 41 Am. Jur. 2d *Incompetent Persons* § 49 (1968).

The constitutional safeguard of equal protection of the laws is not offended unless the classification rests on grounds wholly irrelevant to achievement of the state's objective, and the legislature is given wide discretion in enacting laws which affect some groups of citizens differently than others. *Haddenham v. State,* 87 Wn.2d 145, 150, 550 P.2d 9 (1976).

█ It was not unconstitutional for the legislature to treat sexual psychopaths differently than it treats criminally insane persons under RCW 10.77, or mentally ill persons under RCW 71.05. An example of the reasons the legislature might wish to treat sexual psychopaths differently than mentally ill persons can be found in the testimony in this case. The record reflects that the ordinary course of treatment for a sexual psychopath runs for some 18 months. The mental illness procedures which require a hearing each 6 months, RCW 71.05.320, might well therefore have been considered inappropriate. Merely challenging the wisdom or expediency of a statute is not sufficient to prove its unconstitutionality. *Brewer v. Copeland,* 86 Wn.2d 58, 61, 542 P.2d 445 (1975).

Sexual psychopath statutes ordinarily contemplate confinement until recovery is effected in full or to the extent that the psychopath is no longer a menace to others. 24 A.L.R.2d 350, 352 (1952); 4 C. Torcia, *Wharton's Criminal Procedure* § 626, at 261 (12th ed. 1976). Our statute so

contemplates. RCW 71.06.091. The validity of such indefinite commitments appears generally to be upheld. *People v. Levy,* 151 Cal. App. 2d 460, 311 P.2d 897, 901 (1957); *Trueblood v. Tinsley,* 148 Colo. 503, 366 P.2d 655, 658 (1961); 44 C.J.S. *Insane Persons* § 130, at 287 (1945).

Illustrative of cases affirming the constitutionality of sexual psychopath laws similar to ours is *State v. Noll,* 171 Neb. 831, 108 N.W.2d 108 (1961). Under the Nebraska act, a writ of habeas corpus was the proper manner for an adjudged sexual psychopath to initiate a release hearing. In *Noll* the release procedures were upheld as not violative of due process. Justice Harry Spencer, writing for the Nebraska Supreme Court, expressed the views of that court thusly:

> It is very evident that the Sexual Psychopath Act was intended to permit the removal of a sexual psychopath from society until he is cured or is no longer a menace to the safety of others.

*State v. Noll, supra* at 836. And further,

> It is obvious that the legislature in the Sexual Psychopath Act attempted to achieve two principal objectives. The first was the protection of society through the removal of the offender who cannot refrain from certain acts of behavior. The second was his treatment leading to his restoration to society as a healthy contributing member. In this respect, the act is in perfect harmony with the basic objectives of our legal system.
>
> It is also obvious that the Legislature had in mind that the type of conduct covered by the Sexual Psychopath Act was not the same as that which might be displayed by a person who was mentally ill. The Legislature has very properly seen fit to vest discretionary power in the court for the release of committed sexual psychopaths. There are ample standards available for testing the soundness of such discretion upon appeal. There is no denial of due process.
>
> We find the trial court did not abuse its discretion and properly recommitted defendant to the Lincoln State Hospital.

*State v. Noll, supra* at 837–38.

We uphold the constitutionality of this state's sexual psychopath law and the procedures followed by the trial court. While one purpose of our sexual psychopath law is to provide treatment for the sexual psychopath in an attempt to rehabilitate him, it is undoubtedly also true that an even more basic purpose of the law is to protect society against the activities of sexual psychopaths. *State v. Noll, supra; People v. Levy, supra.*

Petitioner's remaining contentions are without merit. Even if we do consider the psychologist's report admitted into evidence as containing hearsay, in a trial to the court, the trial judge is presumed to have considered only the evidence properly before the court and for proper purposes. *In re Harbert,* 85 Wn.2d 719, 729, 538 P.2d 1212 (1975). Since there was other competent testimony in the record to sustain the trial court's findings, the admission of the report was not reversible error. *Kemp v. Putnam,* 47 Wn.2d 530, 532–33, 288 P.2d 837 (1955). That evidence was admitted in violation of the hearsay rule does not lead to the automatic conclusion that the constitutional right to confrontation has been denied. *California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970). Under the circumstances presented, there was no denial or significant diminution of that right. *See Pointer v. Texas,* 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965).

For the foregoing reasons, we affirm the trial court.

CALLOW, J., concurs.

WILLIAMS, J. (dissenting)—On February 22, 1973, Richard McCarter was convicted of two counts of contributing to the delinquency of a minor, the specified penalty for which is a maximum of 2 years in the county jail. (RCW 13.04.170.) Before sentencing, the prosecuting attorney instituted sexual psychopathy proceedings pursuant to RCW 71.06, and McCarter was sent to Western State Hospital for observation. On September 20, 1973, after a hearing, the court found that McCarter was a sexual psychopath

and committed him to the hospital for care and treatment, to be returned to the custody of the county sheriff "upon completion of the treatment and hospitalization period."

Two years later, on February 19, 1975, McCarter was brought before the court for a hearing to determine whether he should be released from custody. The court decided that McCarter was still a sexual psychopath, was not safe to be at large, and returned him to Western State Hospital for an indefinite stay. In making this decision, the court found that McCarter had not carried his burden of proving it was "highly probable" or by a "preponderance of the evidence" that he was safe to be at large. McCarter's appeal followed.

There is but one issue, and that is whether the court erred in requiring McCarter to prove that he was safe to be at large. I believe the court did err.

The release procedures of the sexual psychopathy act (RCW 71.06) are wholly inadequate to insure that a person committed as a sexual psychopath will not languish in that status indefinitely. The act provides:

> A sexual psychopath committed pursuant to RCW 71.06.060 shall be retained by the superintendent of the institution involved until in the superintendent's opinion he is safe to be at large, or until he has received the maximum benefit of treatment, or is not amenable to treatment, but the superintendent is unable to render an opinion that he is safe to be at large. Thereupon, the superintendent of the institution involved shall so inform whatever court committed the sexual psychopath. The court then may order such further examination and investigation of such person as seems necessary, and may at its discretion, summon such person before it for further hearing, together with any witnesses whose testimony may be pertinent, and together with any relevant documents and other evidence. On the basis of such reports, investigation, and possible hearing, the court shall determine whether the person before it shall be released unconditionally from custody as a sexual psychopath, released conditionally, returned to the custody of the institution as a sexual psychopath, or returned to

the department of institutions to serve the original sentence imposed upon him.

RCW 71.06.091.

Any judicial proceeding which may result in loss of liberty calls for due process standards. *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). The continuation of that deprivation also calls for due process. *McNeil v. Director, Patuxent Institution,* 407 U.S. 245, 32 L. Ed. 2d 719, 92 S. Ct. 2083 (1972); *Humphrey v. Cady,* 405 U.S. 504, 31 L. Ed. 2d 394, 92 S. Ct. 1048 (1972); *Baxstrom v. Herold,* 383 U.S. 107, 15 L. Ed. 2d 620, 86 S. Ct. 760 (1966); *People v. Burnick,* 14 Cal. 3d 306, 535 P.2d 352, 121 Cal. Rptr. 488 (1975); *In re Andrews,* ___ Mass. ___, 334 N.E.2d 15 (1975).

In Washington, deprivation of liberty in a civil proceeding must be on clear, cogent and convincing evidence, the counterpart to proof beyond a reasonable doubt in criminal cases. *In re Levias,* 83 Wn.2d 253, 517 P.2d 588 (1973).

The sexual psychopath act, RCW 71.06, with its indefinite commitment and uncertain release procedures, does not afford McCarter the essentials of due process and fair treatment.

Two other statutes deal with confinement of mentally disordered persons. One is RCW 10.77 concerning the criminally insane. This statute provides that a person confined as criminally insane may be finally discharged if he proves to the court, by a preponderance of the evidence, sitting with a jury if demanded, that he may

> be finally discharged without substantial danger to other persons, or presents a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.

RCW 10.77.200(2).

The statute further provides that the criminally insane person is entitled to a hearing as a matter of right and in no event may the commitment exceed the maximum possible penal sentence for an offense charged but for which he

was acquitted by reason of insanity. RCW 10.77.020. It should be remembered that a person acquitted of a crime by reason of insanity is in confinement because he initially proved by a preponderance of the evidence that he was insane. RCW 10.77.030. *Alter v. Morris,* 85 Wn.2d 414, 536 P.2d 630 (1975).

The other statute is RCW 71.05 which establishes elaborate procedures for the care, treatment, and confinement of the mentally ill who present a likelihood of serious harm to themselves or others. Under this law, no person may be committed for more than 180 days at a time. Successive 180–day commitments are permissible only on the same grounds and pursuant to the same procedures as specified for the initial commitment. RCW 71.05.320. At each hearing, the need for confinement must be proved by clear, cogent and convincing evidence. RCW 71.05.310.

RCW 71.05, the mental illness act, fulfills the requirements of due process admirably. RCW 10.77 for the criminally insane is adequate because confinement must terminate at the expiration of the maximum penal sentence specified for the crime for which the defendant would have been convicted but for his insanity. *Alter v. Morris, supra. State v. Blubaugh,* 80 Wn.2d 28, 491 P.2d 646 (1971). Of course, if the person is still dangerous at the expiration of the sentence, appropriate measures may be taken under RCW 71.05.

Even though McCarter's penal sentence has expired, I would hesitate to order his release because it may be a disservice to him and the public to do so. Rather, I believe the cause should be remanded for a hearing pursuant to the requirements of RCW 71.05.320 and, if necessary, a further hearing each 180 days thereafter. "Psychopathic personality" in the sexual psychopath act

means the existence in any person of such hereditary, congenital or acquired condition affecting the emotional or volitional rather than the intellectual field and manifested by anomalies of such character as to render satis-

factory social adjustment of such person difficult or impossible.

RCW 71.06.010. In RCW 71.05.020(2), "mental disorder" means any organic, mental, or emotional impairment which has substantial adverse effects on an individual's cognitive or volitional functions;

Thus, it appears by statutory definition that a sexual psychopath is suffering a mental disorder and is treatable under the provisions of RCW 71.05. The cause should be remanded for the further proceedings called for herein.

Petition for rehearing denied September 28, 1977.

Review by Supreme Court pending February 3, 1978.