[No. 2599–3.   Division Three.   January 16, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. DANNY MARION WILMOTH, *Appellant.*

420

*Weeks, Dietzen & Skala* and *James H. Kaufman,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Catherine Lee Campbell, Deputy,* for respondent.

McInturff, J.—This case concerns proceedings under the sexual psychopath act, RCW 71.06.

On August 1, 1974, the defendant, Danny Marion Wilmoth, pleaded guilty to indecent exposure and on January 14, 1975, was sentenced to a probationary period of 3 years conditioned, among other things, that he spend 30 days in the county jail. In December 1975, Mr. Wilmoth was charged with two counts of indecent exposure and on August 24, 1976, Mr. Wilmoth was also arraigned on charges of indecent liberties and second–degree assault. On September 16, 1976, Mr. Wilmoth was charged with violation of his probation based on the charges of indecent liberties and second–degree assault. At the same time, the prosecutor filed a petition pursuant to RCW 71.06.020, alleging Mr. Wilmoth to be a sexual psychopath. As a result

of plea bargaining, Mr. Wilmoth admitted the probation violations and agreed to submit to an observation period at Western State Hospital. The charges of indecent exposure and indecent liberties filed in December 1975 and August 1976 were dismissed, and Mr. Wilmoth pleaded guilty to the charge of second–degree assault. In response to the sexual psychopath petition, the trial court ordered Mr. Wilmoth committed to Western State Hospital for a 90–day period of observation as to the existence of sexual psychopathy pursuant to RCW 71.06.040.[1]

At the September 16 hearing, Mr. Wilmoth waived his statutory right to receive a copy of the petition alleging sexual psychopathy 10 days prior to the hearing on the criminal charge. He also waived his statutory right to a probable cause hearing on the issue of sexual psychopathy. He was not advised by the court of his statutory right to a jury trial. However, throughout the proceeding he was represented by counsel.

Following the 90–day observation period at Western State Hospital, another hearing was held. At the commencement of the hearing, defense counsel moved unsuccessfully for a jury trial. The court ruled that Mr. Wilmoth had waived this right by failing to file a written demand as required by RCW 71.06.070.[2] Mr. Wilmoth also raised a hearsay objection to receipt of the statutorily required superintendent's report into evidence.

In April 1977, this matter again came to trial. Defense counsel made a second unsuccessful motion for a jury trial. Maria Wagner, one of the collaborators in the superintendent's report, testified to her observations of Mr. Wilmoth

---

[1]RCW 71.06.040. "If the court finds that there are reasonable grounds to believe the defendant is a sexual psychopath, the court shall order said defendant confined at the nearest state hospital for observation as to the existence of sexual psychopathy. Such observation shall be for a period of not to exceed ninety days."

[2]RCW 71.06.070.
"A jury may be demanded to determine the question of sexual psychopathy upon hearing after return of the superintendent's report. Such demand must be in

during his stay at Western State Hospital. An expert psychiatric witness for the defense, Frederick Montgomery, M.D., also testified. He concluded that Mr. Wilmoth was not a sexual psychopath; he believed that the defendant's major problem was alcoholism. Dr. Montgomery recommended that Mr. Wilmoth be put on probation so that he could enter a community treatment program.

At the conclusion of the hearing, the court gave Mr. Wilmoth the opportunity to choose whether he wanted to be returned to Western State Hospital. While his first desire was to be placed on probation, Mr. Wilmoth said he preferred the penitentiary to Western State Hospital. The court refused the probation request, but complied with Mr. Wilmoth's desire to be sent to the penitentiary in lieu of the hospital.[3] The court also made a recommendation that Mr. Wilmoth receive treatment for alcoholism.

Mr. Wilmoth's first assignment of error concerns the right to a jury in a hearing to determine the question of sexual psychopathy. First, he argues that a hearing under the sexual psychopath statute is criminal in nature and thus the right to a jury trial is of constitutional and not statutory dimensions. He submits that he had a constitutional right to a jury trial under the state and federal constitutions.[4] It is argued that because he was not advised of the right to a jury trial, he did not make a knowing and intelligent waiver. We disagree. There is no constitutional

writing and filed with the court within ten days after filing of the petition alleging the defendant to be a sexual psychopath."

[3]Mr. Wilmoth gave the following reasons in support of his decision to go to the penitentiary:

"A: . . . After I get out I can't live with my wife for another 18 months after the 2 years. The homosexuals, I can't get along with them at all, and I don't feel that they help people all that much. I asked some of the older members if they thought—they had been there for 2 years and I asked them if they thought the program had helped them and they says [sic] no, they didn't, and they had been to prison before and that didn't help them either."

[4]Fourteenth amendment to the United States Constitution; article 1, section 21, of the Constitution of the State of Washington.

right to a jury trial in this instance. The right to a jury trial in a sexual psychopath hearing depends entirely on statute. Our constitutional provision, article 1, section 21, declaring inviolate the right to a jury trial, preserves the right to a jury trial in sexual psychopath proceedings only to the extent it is guaranteed by the statute.[5] Here, the legislature conditioned the right to a jury trial upon the filing of a written demand by the defendant. No such demand was made. Therefore, we find no error.

Next, Mr. Wilmoth argues that the court erred in failing to advise him of his statutory right to a jury trial. We need not reach this question because, as we will show, Mr. Wilmoth was not harmed by the feature of the statute being challenged.

■ The sexual psychopath statute is designed to cope with offenders who commit sexual offenses because of a psychopathic condition. The statute recognizes that the sexual psychopath is neither normal nor legally insane and, for that reason, requires special treatment both for his own sake and for the safety of society.[6] In a proceeding of this nature, the sole function of the jury is to determine the question of sexual psychopathy. Here, Mr. Wilmoth was allowed to decide whether he would be treated as a sexual psychopath. The following colloquy took place between counsel and the defendant:

> Q: If you had a choice between Western State and the penitentiary, which would you prefer?
> A: I will take the penitentiary.

Since the court granted Mr. Wilmoth's wish to be incarcerated in the penitentiary rather than be hospitalized at

---

[5]*In re Ellern*, 23 Wn.2d 219, 224, 160 P.2d 639 (1945); *State v. Strasburg*, 60 Wash. 106, 115, 110 P. 1020 (1910); *State ex rel. Mullen v. Doherty*, 16 Wash. 382, 384–85, 47 P. 958 (1897).

[6]*State v. McCarter*, 17 Wn. App. 319, 325, 562 P.2d 995 (1975), quoting with approval *Statutes Relating to Sexual Psychopaths*, Annot., 24 A.L.R.2d 350, 351 (1952).

Western State as a sexual psychopath, he was not prejudiced by the failure of the court to advise him of his statutory right to a jury trial. In effect, Mr. Wilmoth is appealing from his own voluntary decision. The court refused to grant his request for probation; however, this appeal does not challenge the sentence imposed. "One cannot urge the unconstitutionality of a statute unless harmed by the particular feature of the statute challenged." *State v. McCarter,* 17 Wn. App. 319, 324, 562 P.2d 995 (1977); *State v. Kent,* 87 Wn.2d 103, 111, 549 P.2d 721 (1976); *State v. Lundquist,* 60 Wn.2d 397, 401, 374 P.2d 246 (1962). Mr. Wilmoth was not harmed, thus we find no prejudice.

The same principle applies to Mr. Wilmoth's remaining contention dealing with the hearsay objection to the submission of the superintendent's report. Even if we were to consider the superintendent's report as containing hearsay, or inadmissible, the defendant was not harmed by its admission in view of his desire not to return to Western State Hospital for treatment.

The judgment of the Superior Court is affirmed.

MUNSON and ROE, JJ., concur.